UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDON SANDERS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) C.A. NO. |
| CHECKR, INC., | ) ) |
| Defendant. | ) JURY TRIAL DEMANDED ) ) ) ) ) |

## COMPLAINT

### I.  PRELIMINARY STATEMENT

1. Plaintiff Brandon Sanders, individually and on behalf of all others similarly situated, files this Class Action Complaint against Checkr, Inc. ("Checkr" or "Defendant"), brought on behalf of thousands of consumers affected by Checkr's practices for selling background reports for employment purposes, and in using such reports to adjudicate consumers' eligibility for employment, retention, or promotion.

2. In May 2018, Checkr sold a consumer report about Mr. Sanders in connection with his application for employment with MakeSpace Labs, Inc. ("MakeSpace"). After the application and interview process, MakeSpace gave him a conditional offer of employment contingent on passing a background check. MakeSpace then ordered a consumer report about Mr. Sanders from Checkr. Devastatingly for Mr. Sanders, Checkr's consumer report incorrectly stated he had multiple pending criminal charges for rape and sexual assault. Mr. Sanders does not have any pending criminal charges. He has no criminal record whatsoever. Nonetheless,

Checkr adjudicated Mr. Sanders as ineligible for employment at MakeSpace, and MakeSpace adopted Checkr's adjudication without any further review or process, and summarily denied Mr. Sanders employment.

## II.  NATURE OF THE CASE

3. Mr. Sanders brings this action against Defendant Checkr for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and the New York Fair Credit Reporting Act ("NY FCRA"), N.Y. Gen. Bus. Law § 380 *et seq.*

4. The FCRA regulates the use of "consumer reports" for employment purposes, commonly called "background reports."

5. The FCRA governs the actions of both "consumer reporting agencies" or "CRAs," which compile and sell consumer reports, and "users of consumer reports."

6. The FCRA and NY FCRA both require CRAs such as Checkr to use reasonable procedures to assure the maximum possible accuracy of information included on consumer reports. 15 U.S.C. § 1681e(b); N.Y. Gen. Bus. Law § 380-j(e).

7. Checkr violated this fundamental requirement of the FCRA and NY FCRA by reporting criminal record information about Mr. Sanders without obtaining the most recent disposition, which clearly demonstrated that Plaintiff had been acquired of all charges more than two years prior to Checkr's report.

8. Checkr routinely, and as a matter of policy and practice, knowingly, intentionally, recklessly, and willfully includes criminal record information on consumer reports which does not include the most updated disposition of such records, which are therefore inaccurate.

9. The NY FCRA further mandates that "[n]o consumer reporting agency shall report or maintain in the file on a consumer, information…relative to an arrest or a criminal

charge unless there has been a criminal conviction for such offense, or unless such charges are still pending." N.Y. Gen. Bus. Law § 380-j(a)(1).

10. Checkr has adopted and maintained a policy and practice of knowingly, intentionally, recklessly, and willfully reporting or maintaining in the files of consumers, arrest and criminal charge information for which there has not been a conviction and for which charges are not pending.

11. In addition to operating as a consumer reporting agency, Checkr also operates as a "user of consumer reports" by reviewing the background reports it creates and applying standardized criteria to "adjudicate" the subject of the report as either eligible or ineligible for employment.

12. When using criminal background reports for employment purposes, "any person" who will take adverse action against a consumer based in whole or in part on the contents of the report, must provide job applicants like Plaintiff with a copy of the report as well as a written summary of their rights under the FCRA. 15 U.S.C. § 1681b(b)(3).

13. Providing a copy of the criminal background report as well as a statement of consumer rights at least five business days before making a final adverse employment decision arms job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading public records-based reports. The FCRA is designed to permit individuals with ample time to identify inaccuracies or explain the contents of background reports *before* any decision is made.

14. In addition to providing MakeSpace with a background report about Plaintiff, Checkr has operated in this and other instances as both the CRA generating the background check as well as the agent of the employer to execute all decisions based on the information

contained therein.  Pursuant to its contracts with MakeSpace and other employers, Checkr compares the background reports it generates against hiring criteria provided in advance and adjudicating this individuals' eligibility for employment.

15.     Checkr is therefore subject to the FCRA's requirements on users of consumer reports, which include a requirement that the user provide the consumer who is the subject of a report with notice and copy of the report at least five business days before taking adverse employment action.  15 U.S.C. § 1681b(b)(3).

16.     Checkr's practices harm consumers seeking employment by prejudicing their employers and prospective employers with adverse criminal record information that is inaccurate unreportable under New York law.

### III.     JURISDICTION & VENUE

17.     Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

18.     Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

### IV.     PARTIES

19.     Plaintiff Brandon Sanders is an adult individual who resides in New York, New York.

20.     Defendant Checkr is a consumer reporting agency that regularly conducts business in the State of New York, and which has a principal place of business in San Francisco, California.

V. **FACTUAL ALLEGATIONS**

A. **Checkr's Operations as a Consumer Reporting Agency**

21. Among other things, Checkr sells consumer reports to employers who wish to screen job applicants.

22. Some of the consumer reports Checkr sells to employers contain information regarding a job applicant's criminal arrest and conviction history.

23. CRAs such as Checkr deal in volume and use standardized procedures to gather information and attribute it to individuals. They do not "reinvent the wheel" by using unique practices with respect to each different report.

24. Checkr's standardized procedures for obtaining criminal record information routinely fail to obtain the most updated dispositions of those records, and regularly included outdated and inaccurate records on consumer reports.

B. **Checkr's Operations as a User of Consumer Reports**

25. As an additional service to its employer customers, Checkr will apply standardized criteria supplied in advance by the employer to apply a "grade" or "adjudication" to its background reports.

26. Checkr grades the results of its criminal searches as "green" or "Clear" if the results meet the employer's criteria, and gives a grade of "red" or "Consider" if the results do not meet the employer's criteria.

27. Checkr will furthermore, for an additional fee, send purported "pre-adverse action" notices to consumers on behalf of employers, based upon its adjudications. https://checkr.com/product/.

5

28. For those employers who elect to have Checkr send out alleged "pre-adverse action" notices, those notices are sent out to consumers after Checkr has already used the employer's criteria to determine whether or not an adverse action should be taken and communicated those results back to the employer. Thus, by the time Checkr sends out any alleged "pre-adverse action" notice, the consumer has already been disqualified from employment, promotion, or retention. The consumer is not notified in advance that she or he is likely to be rejected, nor does the consumer have any opportunity to dispute the report with Checkr or to inform the prospective employer of the circumstances giving rise to such information.

29. Checkr "uses" the information in its reports, including adverse public record information, when it adjudicates candidates for employment, retention, or promotion on behalf of its employer customers.

30. Upon information and belief, MakeSpace hired Checkr to perform adjudications of the background reports it purchased about consumers for employment purposes, and provided Checkr in advance with criteria Checkr used to adjudicate whether or not to disqualify an applicant based upon the consumer report Checkr generated.

### C. The Experience of Plaintiff Brandon Sanders

31. In April 2014, during Mr. Sanders' senior year in college, he was charged with rape by forcible compulsion, sexual assault, aggravated indecent assault without consent, and indecent assault without consent.

32. Mr. Sanders strongly maintained his innocence. He pled not guilty, and rejected multiple opportunities to take a plea deal, which would have involved registering as a sex offender.

33. The rape charge against Mr. Sanders was dismissed on February 3, 2015.

34. Mr. Sanders took the case to trial, which began on October 2, 2015. The next day, the court declared a mistrial.

35. Mr. Sanders waited nearly another year for the next trial.

36. The stress of waiting took a tremendous toll on Mr. Sanders. In June 2016 he spent several days in the hospital receiving treatment for depression and anxiety. He subsequently had to start seeing a therapist to manage the continuing stress.

37. The case went to trial a second time on August 30, 2016. After a two-day trial, the jury found Mr. Sanders **not guilty** of all the charges.

38. Mr. Sanders was profoundly relieved by the not guilty verdict and was ready to put the lengthy and stressful experience behind him. He would not be going to prison or be labeled a sex offender, and had cleared his name.

39. In May 2018, Mr. Sanders applied for employment with MakeSpace.

40. After completing the employment application and interview, MakeSpace sent Mr. Sanders an employment offer letter on May 10, 2018.

41. On May 14, 2018, Mr. Sanders e-mailed Jessica Lu, a MakeSpace employee:

> I'm just touching base to alert you that I've decided to join MakeSpace! I signed the offer letter yesterday and am beyond excited to get started. I look forward to meeting the team and get underway with my training next week.

42. Ms. Lu responded that MakeSpace was "very excited" to have him join the company and that training started on Monday, May 21, 2018.

43. On Thursday, May 17, 2018, Checkr prepared a background report about Mr. Sanders pursuant to its agreement with MakeSpace.

44. According to Checkr, Mr. Sanders had three open criminal charges for felony "Rape Forcible Compulsion," felony "Sexual Assault," felony "Agg Ind. Assault W/O Consent," and misdemeanor "Indec Asslt W/O Cons of Other."

45. Checkr reported that each of these criminal charges had a "Charge Date of May 21, 2014."

46. Checkr reported that each of these charges involved "Case Number MJ-48303-CR-0000041" with a "Court Jurisdiction" in "AOC – Pennsylvania – McKean County."

47. Checkr reported that each of these criminal charges had a "Disposition" of "Held for Court," with a "Disposition Date" of May 21, 2014.

48. Of course, this information was inaccurate and untrue, because there were no pending criminal charges against Mr. Sanders at the time of the report.

49. On February 3, 2015, the Commonwealth of Pennsylvania **dismissed** the charge of "Rape Forcible Compulsion."

50. On August 30, 2016, a jury found Mr. Sanders **not guilty** of the remaining criminal charges for felony "Sexual Assault," felony "Agg Ind. Assault W/O Consent," and misdemeanor "Indec Asslt W/O Cons of Other."

51. Checkr failed to report the final dispositions of the criminal charges against Mr. Sanders.

52. The public records for the dismissal and not guilty verdicts were publicly available to Checkr.

53. Checkr's report was inaccurate.

54. Checkr's report included criminal charges that were not pending at the time of the report and which did not result in a criminal conviction.

55. Pursuant to the criteria provided in advance by MakeSpace, Checkr graded its report about Mr. Sanders as "red" or "Consider," instead of "green" or "Clear."

56. MakeSpace adopted Checkr's adjudication as its own without any further process afforded to Mr. Sanders, and removed him from eligibility for employment upon receiving the adjudication.

57. Pursuant to its agreement with MakeSpace, Checkr sent an email to Mr. Sanders on May 17, 2018:

> Hello Brandon Terrell Sanders,
>
> Attached is a copy of your background report.
>
> The company that initiated this background check has received a copy of the report as well. If you have any questions about your status with that company, please contact them directly.
>
> A Summary of Your Rights Under the Fair Credit Reporting Act is attached and can also be found here.
>
> Checkr will have no further updates available for you, as your background check is now complete.
>
> Thank you,
>
> Checkr Inc.

58. The May 17, 2018 email did not instruct Mr. Sanders to contact MakeSpace if the information was inaccurate, or provide any time frame for doing so.

59. Mr. Sanders was shocked and horrified by the appearance of this inaccurate and outdated information on his background report – this was exactly the result he had sought to avoid by rejecting multiple plea deals and going to trial. He believed that the extremely stressful experience of the two trials was behind him and that he had cleared his name.

60. On Monday, May 21, 2018, Mr. Sanders arrived at MakeSpace to begin his training, prepared to address Checkr's inaccurate reporting by explaining that the charges were no longer pending and that he had been found not guilty on all charges.

61. Instead, Ms. Lu told Mr. Sanders that MakeSpace would be unable to move forward with his employment because of the criminal records in Checkr's consumer report.

62. Mr. Sanders disputed the report with Checkr.

63. In only a few days, Checkr was able to correct its inaccurate report and send Mr. Sanders a revised report – which did not include any criminal records whatsoever.

64. After receiving the revised consumer report from Checkr, Mr. Sanders contacted MakeSpace to reiterate that he had been acquitted of all charges that had not already been dismissed, and maintains a clear criminal record. He pointed out that Checkr's original report did not contain up to date information about the disposition of the trial, and attached a full copy of the court records showing that he had been exonerated.

65. On May 23, 2018, MakeSpace's Director of Human Resources, Megan Lyons, left a voicemail for Mr. Sanders: "I just wanted to follow up on the conversation that you had on Monday with Jessica. As you know your offer was contingent on passing a background check and unfortunately your background check results disqualify you from MakeSpace…"

66. Mr. Sanders e-mailed Ms. Lyons and asked why he was disqualified from employment with MakeSpace given that he has no convictions whatsoever.

67. Ms. Lyons responded via e-mail: "MakeSpace follows a specific process for clearing various items that are generated in background checks. The items that were generated on your background check unfortunately disqualify you from employment due to the nature of the items that were listed."

68. On May 31, 2018, Mr. Sanders responded to Ms. Lyons:

Hey Megan,

This is Brandon Sanders reaching out to you after obtaining some new information. It appears Checkr made a mistake with my background check (as I noted) and have since revised this issue after an investigation.

With the revisions, my background check was completely clean.

I am aware Checkr provided MakeSpace with these corrections. With this new information, I am reaching out to see if I may re-join the company after being terminated based on information that was incorrect, prior to a proper investigation?

I look forward to hearing from you.

69. Ms. Lyons responded that MakeSpace "will not be reinstating your employment at MakeSpace."

70. Checkr took adverse action against Mr. Sanders by adjudicating him as ineligible for employment based upon the background check it generated, before he had notice, a copy of the background check, and a copy of his FCRA rights.

71. As a result of this conduct by Checkr, Plaintiff suffered actual damages including without limitation, by example only and as described herein on his behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

## VI.     CLASS ALLEGATIONS

72. Plaintiff brings this action individually and pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Classes:

   a. <u>FCRA § 1681e(b) Class:</u>  All natural persons residing within the United States and its Territories who, beginning two (2) years prior to the filing of this Complaint and continuing through the conclusion of this action, were the subject of a consumer report prepared by Defendant which included any public record information (including

11

       any criminal record information) for which the status or disposition of the public record had changed more than 30 days prior to the date of the report, and for which Defendant did not include the most recent status or disposition.

    b. <u>FCRA § 1681b(b)(3) Class:</u> All natural persons residing within the United States and its Territories who (i) beginning five (5) years prior to the filing of this Complaint and continuing through the conclusion of this action, (ii) were the subject of a consumer report prepared by Defendant for employment purposes, (iii) Defendant scored the report as "red" or "Consider" and (iv) were not provided with a copy of the report and/or a written summary of their rights under the FCRA at least five (5) business days prior to the date Defendant scored the report.

    c. <u>NY FCRA § 380-j(a)(1) Maintain in File Class:</u> All persons residing within the State of New York about whom, beginning two years prior to the filing of the Complaint and continuing through the resolution of this action, Checkr maintained in its file about such person any arrest or criminal charge information that did not result in a conviction and that were not still pending.

    d. <u>NY FCRA § 380-j(a)(1) Prepare Report Class:</u> All persons residing within the State of New York who, beginning two years prior to the filing of the Complaint and continuing through the resolution of this action, were the subject of a consumer report prepared by Checkr that included any arrest or criminal charge information that did not result in a conviction and that were not still pending at the time of the report.

73. Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

74. **Numerosity. Fed. R. Civ. P. 23(a)(1).** The members of the Classes are so numerous that joinder of all is impractical. Upon information and belief, the number of job applicants and employees harmed by Defendant's practices are more numerous than what could be addressed by joinder, and those persons' names and addresses are identifiable through documents or other information maintained by Defendant.

75. **Existence and Predominance of Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individuals.  The common legal and factual questions include, among others: (1) whether Checkr maintains reasonable procedures to assure maximum possible accuracy of the information on its consumer reports; (2) whether Checkr includes arrests or criminal charges that did not result in convictions and that were not still pending at the time of a report in its files; (3) whether Checkr includes arrests or criminal charges that did not result in convictions at that were not still pending at the time or a report on consumer reports; (4) whether Checkr used consumer reports for employment purposes to take adverse action against consumers without first providing them with notice, a copy of the report, and a summary of FCRA rights at least five business days prior to the adverse action; and (5) whether Checkr acted willfully or negligently.

76. **Typicality.  Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of each Class Member.  Plaintiff has the same claims for relief that he seeks for absent Class Members.

77. **Adequacy**.  **Fed. R. Civ. P. 23(a)(4).**  Plaintiff is an adequate representative of the Classes because his interests are aligned with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Classes.

78. **Predominance and Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Classes members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual

prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Classes to individually redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VII.  CAUSES OF ACTION

### COUNT I
### (CLASS CLAIM)
### FCRA § 1681e(b)

79. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

80. Defendant is a "person" and "consumer reporting agency" as defined by sections 1681a(b) and (f) of the FCRA.

81. Plaintiff is a "consumer," as defined by section 1681a(c) of the FCRA.

82. The above-mentioned background reports are "consumer reports" as defined by section 1681a(d) of the FCRA.

83. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for negligently and willfully failing to maintain reasonable procedures to assure maximum possible accuracy of the consumer reports that it sold, in violation of 15 U.S.C. § 1681e(b).

## COUNT II
## (CLASS CLAIM)
## FCRA § 1681b(b)(3)

84. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

85. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for negligently and willfully taking adverse action against consumer job applicants based upon the contents of consumer reports without first providing notice, a copy of the report, and a statement of rights in violation of FCRA section 1681b(b)(3).

## COUNT III
## (CLASS CLAIM)
## N.Y. Gen. Bus. Law § 380-j(a)(1)

86. Plaintiff incorporates the foregoing paragraphs as though the same were set forth herein.

87. Checkr violated N.Y. Gen. Bus. Law § 380-j(a)(1) by preparing a consumer report about Plaintiff that included arrest and criminal charge information that did not result in a conviction and that was not pending at the time of the report.

88. Checkr violated N.Y. Gen. Bus. Law § 380-j(a)(1) by maintaining in its file about Plaintiff arrest and criminal charge information that did not result in a conviction and that was not pending at the time of the report.

89. Checkr's violation of N.Y. Gen. Bus. Law § 380-j(a)(1) is based on a common policy and practice.

90. Despite its duties under N.Y. Gen. Bus. Law § 380-j(a)(1), Checkr has nonetheless deliberately, willfully, intentionally, recklessly, and negligently adopted a policy and practice that disregards its obligations, in violation of N.Y. Gen. Bus. Law § 380-j(a)(1).

## COUNT IV
## (INDIVIDUAL CLAIM)
## N.Y. Gen. Bus. Law § 380-j(e)

91. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

92. Checkr violated the NY FCRA by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report furnished regarding Mr. Sanders.

93. Checkr knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the NY FCRA, and in well-established case law.

94. Checkr obtained or had available substantial written materials that apprised it of its duties under the NY FCRA.

95. Despite knowing of these legal obligations, Checkr acted consciously and/or recklessly in breaching its known duties and deprived Mr. Sanders of his rights under the NY FCRA.

96. Checkr's violation of the FCRA was willful, rendering it liable pursuant to NY Gen. Bus. Law § 380-L. In the alternative, Checkr was negligent, entitling Plaintiff to recover under NY Gen. Bus. Law § 380-M.

97. As a result of this conduct by Checkr, Plaintiff suffered actual damages including without limitation, by example only and as described herein on his behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

On the First Claim for Relief:

1. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

2. An award of compensatory damages;

3. An award of pre-judgment and post-judgment interest ad provided by law; and

4. Such other relief as the Court deems just and proper.

On the Second Claim for Relief:

1. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

2. An award of compensatory damages;

3. An award of pre-judgment and post-judgment interest ad provided by law; and

4. Such other relief as the Court deems just and proper.

On the Third Claim for Relief:

1. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

2. An award of compensatory damages;

3. An award of injunctive and declaratory relief to rectify Defendant's unlawful practices;

4. An award of pre-judgment and post-judgment interest ad provided by law; and

5. Such other relief as the Court deems just and proper

On the Fourth Claim for Relief:

1. Actual damages to be determined by the jury;

2. An award of injunctive and declaratory relief to rectify Defendant's unlawful practices;

3. Attorneys' fees;

4. Costs of the action;

5. Such other relief as the Court deems just and proper

## TRIAL BY JURY

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

DATE: November ___, 2018.

BY:   /s/ Adam G. Singer
**Law Office of Adam G. Singer, PLLC**
60 E 42nd Street, Suite 4600
New York, NY 10165
T: 212.842.2428
F: 212.658.9682
E: asinger@adamsingerlaw.com

**Weiner & Sand LLC**
Andrew L. Weiner
Jeffrey B. Sand*
3525 Piedmont Road
7 Piedmont Center
3rd Floor
Atlanta, GA 30305
T: 404.205.5029
T: 404.254.0842
F: 866.800.1482
E: aw@atlantaemployeelawyer.com

18

E: js@atlantaemployeelawyer.com

**Francis & Mailman, P.C.**
James A. Francis*
Lauren KW Brennan*
1600 Market Street, 25th Floor
Philadelphia, PA 19103
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: lbrennan@consumerlawfirm.com

**Pro hac vice* applications forthcoming

*Attorneys for Plaintiff*